UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE NICHOLS,                          Civil Action No. 14-11062

     Plaintiff,                          HON. LINDA V. PARKER
                                         U.S. District Judge
v.                                       HON. R.  STEVEN WHALEN
                                         U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Willie Nichols ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (Tr. 190-196, 197-202).  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

On November 21, 2011, Plaintiff filed applications for  DIB and SSI, alleging disability as of October 29, 2011 (Tr. 197-198, 204-209).  After the initial denial of the claim, he requested an administrative hearing, held on November 7, 2012 in Mt. Pleasant, Michigan (Tr. 40).  Administrative Law Judge ("ALJ") Curt Marceille presided by teleconference from Chicago (Tr. 40).  Plaintiff, represented by attorney John Morosi, testified (Tr. 44-67), as did Vocational Expert ("VE") Mr. Hyman (Tr. 67-73).  On December 4, 2012, ALJ Marceille found Plaintiff not disabled (Tr. 22-35).  On February 4, 2014,  the Appeals Council denied review (Tr. 1-7).  Plaintiff filed for judicial review of the Commissioner's decision on March 11, 2014.

## BACKGROUND FACTS

Plaintiff, born March 11, 1972, was 40 when the ALJ issued his decision (Tr.  35, 197).  He completed high school and worked previously as a prep cook (Tr. 216).  His application for benefits alleges disability as a result of short term memory loss, back problems, arm pain, headaches, a learning disorder, "bumps in groin," "large skin flat on groin," "bumps on whites of left eye," and "fear of crowds" (Tr. 215).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

He had not worked in the last five years because he had been incarcerated following a conviction for arson (Tr. 44).  He set fire to the house of an individual who sold him "some

bad stuff and that's how [he] got back" (Tr. 44).  He was disabled due to the inability to stay in "one spot for too long" and memory problems (Tr. 45).  He stated that he did not receive treatment while he was in jail, but later acknowledged that his treaters determined that he no longer required treatment (Tr. 45).  Prescription medicine made him sleepy (Tr. 45).  He acknowledged that while in jail, he told medical staff that he did not experience depression, suicidal thought, or unreasonable suspicions (Tr. 45).  He testified that in reality, he experienced depression while in prison but "just didn't feel like going to the sessions" (Tr. 46).  He denied current mental health treatment (Tr. 46-47).

He had experienced steadily increasing back problems in the past 15 years (Tr. 47). He experienced difficulty bending (Tr. 47).  He first sought back treatment in July, 2012 (Tr. 47).  He "lived with the pain" until it became so bad that he was forced to seek treatment (Tr. 48).  He did not have health insurance (Tr. 48).  He was now taking Norco and Flexeril for back pain (Tr. 48).  He typically experienced level "6.5" pain on a scale of 1 to 10 while taking medication and "at least a '9'" without (Tr. 48-49).  He had recently seen a neurosurgeon (Tr. 49).  He coped with back pain with medication and changing position (Tr. 50).  He reported some degree of relief from medication (Tr. 51).

Plaintiff spent his waking hours listening to the radio or watching television (Tr. 51). He was able to read "parts" of the newspaper (Tr. 51).  He contributed to the household responsibilities by taking out the trash, cooking, and cleaning (Tr. 52).  He had not driven since losing his license (Tr. 52-53).  He was able to grocery shop (Tr. 53).  He had been

unable to lift more than five pounds for the last "three or four months" (Tr. 54). He was not a "very good" reader (Tr. 54). He acknowledged that he stated that he could lift 20 pounds as of September, 2011, but alleged that his condition had worsened (Tr. 54). He was unable to sit or stand for more than 30 minutes at a time (Tr. 54). He denied problems with his hands (Tr. 55).

Before being incarcerated, Plaintiff worked as a prep cook, noting that although he worked in that position for eight years, he did not remember what he did (Tr. 55). He would be unable to return to the prep cook position due to his inability to be on his feet for eight to nine hours a day (Tr. 55). His work abilities were limited by memory problems (Tr. 55). He noted that his mother filled out the disability application for him (Tr. 56-57). While in school, Plaintiff was placed in both regular and special education classes (Tr. 57).

In response to questioning by his attorney, Plaintiff reported that he had experienced audio hallucinations since a car accident in the 1990s (Tr. 58). The voices did not interfere with his ability to work (Tr. 59). He relied on his parents for economic and emotional support (Tr. 59). He was able to handle money but noted that it took him "a little time" to perform calculations (Tr. 60). He had never written a check (Tr. 60). Plaintiff reported that he was obliged to recline for three times for up to 25 minutes each day due to back pain (Tr. 60-61). Intense back pain created concentrational problems (Tr. 61). He experienced sleep disturbances due to back pain (Tr. 61-62). He experienced periodic back spasms (Tr. 62). Steroid injections had not resolved his back problems (Tr. 63). He experienced radiculopathy

on the right (Tr. 63).  He was able to follow written instructions so long as he understood all the words (Tr. 64).  He experienced anxiety in public and had problems making "small talk" (Tr. 64-65).  He stated that he did not experience memory problems until the 1990s car accident (Tr. 66).  In response to renewed questioning by the ALJ, Plaintiff stated that the memory problems did not interfere with his ability to work until 2007 because he "had a really good boss" who gave him instructions (Tr. 67).

### B.   Medical Evidence

#### 1.  Treating Records

July, 1996 records state that Plaintiff was diagnosed with a closed head injury following a car accident[1] (Tr. 536).  Following the accident, his intellectual functioning was classified in the "borderline retarded range" (Tr. 540).  He noted that he had been told that he was diagnosed as "learning disabled" with Attention Deficit Disorder (Tr. 547).  He reported work as a factory worker (Tr. 548).  August, 1996 records by William D. MacInnes, Ph.D. state that Plaintiff "probably had low premorbid intellectual functions" (Tr. 533).  Treating records state that Plaintiff experienced "significant short-term memory deficits" (Tr. 534).  September, 1996 treating records state that Plaintiff was advised to enroll in cognitive therapy and discontinue the use of alcohol (Tr. 533).

---

[1]The Appeals Council determination states that Exhibits 14F and 16F were added following the administrative decision (Tr. 5).  While the determination makes no mention of Exhibit 15F (Tr. 528-553), I note that the administrative opinion likewise does not reference the Exhibit 15F material.  It is unclear whether the ALJ was able to review the 15F evidence.

A November, 2007 Michigan Department of Corrections ("MDOC") prescription review states that Plaintiff had been prescribed Elavil for depression while incarcerated in a county jail (Tr. 303, 347).   Robert J. Clark, Ph.D. noted that psychological testing "suggested that" Plaintiff was "likely to be hostile, self-absorbed, defiant against authority, controlling, and immature" and was "also likely to present delusional/paranoid thought processing perhaps while experiencing various social pressures" (Tr. 301). He was assigned a GAF of 52[2] (Tr. 300, 414).   A psychological examination was unremarkable (Tr. 348). The following month, Plaintiff stated that he had heard voices since the age of 12 (Tr. 314, 427).   He reported that he held a "stable job" for seven years and was currently in a long-term romantic relationship (Tr. 309).  He was assigned a GAF of 55 (Tr. 306).

In March, 2008, Plaintiff stated that he did not "really have a need" for psychological therapy and was not taking his medication (Tr. , 317, 326).  Case management notes from the same month describe him as a "very timid man that does not get into many altercations" (Tr. 436).  He requested a room where he could "nap or read during the day" (Tr. 436).  He was assigned a GAF of 55 (Tr. 317).   June, 2008 records state that Plaintiff requested that his medications be stopped (Tr. 331).   He was assigned a GAF of 61 with "average" intelligence (Tr. 329, 333, 444).   In March, 2009, Plaintiff was assigned a GAF of 61 with major

---

[2]

A GAF score of 51–60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* ( *"DSM–IV–TR"* ), 34 (4th ed.2000).

-6-

depressive disorder, "single episode in full remission"[3] (Tr. 337-338). The report noted "mildly impaired" intellectual function (Tr. 337). A March, 2011 mental health evaluation performed in preparation for a parole board review states that Plaintiff experienced short term memory problems following a automobile accident at the age of 20 (Tr. 341, 469). He reported that he had to write down "locker combination numbers and things like that" (Tr. 341). He denied other health concerns (Tr. 341). Plaintiff appeared fully oriented with an appropriate affect (Tr. 341). He exhibited a normal gait and physical appearance (Tr. 341). The evaluator found no evidence "of a disorder of mood, thought, or intellectual impairment" (Tr. 342). Plaintiff was advised to "secure and maintain full time employment" upon release and participate in "substance abuse counseling" (Tr. 343). He was assigned a GAF of 80[4] (Tr. 344, 474).

In January, 2012, Plaintiff reported back pain (Tr. 359). A March, 2012 x-ray of the lumbar spine showed "moderately severe degenerative disc changes at L5-S1" (Tr. 362, 373). He was referred to a neurosurgeon (Tr. 373). Plaintiff was prescribed Flexeril, Naprosyn, and Ultram (Tr. 367). Treating notes state that Plaintiff experienced "minimal function[al]

---

[3]GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 "*DSM–IV–TR*"

[4]

A GAF rating of 71–80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *DSM–IV–TR* at 34.

impairment" of activities of daily living (Tr. 368). Plaintiff rated his pain as a "5" on a scale of 1 to 10 (Tr. 368). An MRI of the lumbar spine showed a disc degeneration at L5-S1 stenosis "with possible mass effect" on the nerve root (Tr. 379-380). Mohamad H. Abuharaz recommended that Plaintiff undergo steroid injections (Tr. 388). In August, 2008, neurosurgeon John N. DiBella, M.D. noted Plaintiff's report of "minimal relief of discomfort" resulting from the injections (Tr. 481). In September, 2012, Mark S. Adams, M.D. noted that Plaintiff's insurance did not cover therapy or surgery (Tr. 494). Plaintiff reported that Norco was insufficient to address the back pain (Tr. 494). The following month, Dr. Adams completed a medical questionnaire, finding that Plaintiff was limited to walking two blocks and sitting, standing, or walking for less than two hours in an eight-hour workday (Tr. 500). He found that Plaintiff required a sit/stand option "as needed" and was limited to lifting 10 pounds on an occasional basis (Tr. 500-501).

### 2. Consultative and Non-Treating Records

In October, 2011, George Pestrue, Ph.D. performed a consultative psychological examination, noting Plaintiff's report of memory problems, an aversion to crowds, and the inability to walk more than 20 minutes at a time (Tr. 350). He reported that he worked as a dish washer/prep cook until his incarceration (Tr. 352). Dr. Pestrue noted a stiff gait and that Plaintiff appeared "mildly depressed" (Tr. 353-354). He exhibited adequate short term memory (Tr. 354). Dr. Pestrue assigned Plaintiff a GAF of 45 due to social anxiety disorder

and dysthymia[5] (Tr. 355).  Dr. Pestrue found marked limitations in the ability to "ask simple questions," accept instruction, and get along with coworkers (Tr. 357).

In February, 2012, Dr. Pestrue administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") noting a full scale IQ of 67 with a developmental reading disorder and borderline intellectual functioning  (Tr. 363-364).

### 3.  Records Submitted After the December 4, 2012 Administrative Decision[6]

July, 1996 records state that Plaintiff denied problems in attention or concentration following a closed head injury in a car accident (Tr. 555).  January, 2012 records state that Plaintiff experienced back pain (Tr. 504).   Imaging studies of the left knee were unremarkable (Tr. 515).

### C.     Vocational Expert Testimony

VE Mr. Hyman classified Plaintiff's former work as a "cook helper" as unskilled and exertionally medium (exertionally light as performed)[7]  (Tr. 68).  The ALJ then posed the

---

[5]A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV–TR* at 34

[6] Discussion of records duplicating those before the ALJ has been omitted.

[7]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;"  *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

following question to the VE, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [A]ssume that this individual is capable of performing light work as defined in the regulations . . . . Standing and walking six of eight hours, sitting two of eight hours. This individual can occasionally balance, stoop, kneel, crouch and crawl. . . . I would exclude climbing ladders, ropes or scaffolds. This individual should not work with hazards, and by that I mean unprotected heights and dangerous moving machinery. The work should be simple, routine and repetitive. It should involve only occasional if any decision-making and work place changes. it should also involve only occasional superficial interaction with coworkers, supervisors and the public. And it should be work that can be learned by short demonstrations. Reading should not be an essential element of the job. If we assume those limitations, starting with the past work, would that remain viable? (Tr. 68-69).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's former job or any other work (Tr. 69-70). However, if the restriction to work that could be learned by "short demonstration" were modified to work that could be learned between a short demonstration and "up to and including 1 month,"[8] the individual could perform the unskilled, light work of a housekeeping cleaner (8,500 positions in the regional economy); small products assembler (4,020); and "assembler II" (4,010) (Tr. 70-71).

     In response to questioning by Plaintiff's counsel, the VE testified that if the

---

[8]

     The VE was referring to work at Specific Vocational Preparation ("SVP") 2, which refers to unskilled work requiring up to one month of training. Dictionary of Occupational Titles ("DOT"), Appendix C, http://www.occupationalinfo.org (last visited February 26, 2015). In contrast, the hypothetical limitation of work that can be "learned by short demonstrations" refers to SVP 1. Both SVP 1 and 2 are classified as unskilled work. SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000).

hypothetical individual were additionally limited by the need to miss work two times a month due to pain, the above jobs would be precluded (Tr. 71). He testified further that if the same individual were required to take three unscheduled breaks each day at which time he would be required to lie "flat on his back," all gainful employment would be precluded (Tr. 72). The VE stated that if the hypothetical individual were limited to less than 10 pounds lifting, all of the above jobs would be eliminated (Tr. 72-73).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine; obesity; borderline intellectual functioning; depressive disorder; and anxiety disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24-25). Citing Dr. Hill's February, 2012 non-examining findings, the ALJ found mild restrictions in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 26, 79). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [H]e should not be required to work near hazards (unprotected heights, moving machinery) or to climb ladders, ropes, or scaffolds. He is able to balance, stoop, kneel, crouch, or crawl occasionally. . . . [T]he claimant retains the capacity to understand and remember simple instructions after a short demonstration, and to perform simple, routine, repetitive tasks that do not require an individual to be able to read. He is able to interact on an occasional superficial basis with others. He is able to adapt to occasional changes in the workplace and to engage in occasional decision-making (Tr. 26-27).

-11-

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as a housekeeper, small products assembler, and "assembler II" (Tr. 35).

The ALJ discounted Plaintiff's allegations of limitation. He noted that the prison records showed an intact memory and a "calm and cooperative" demeanor (Tr. 28). The ALJ noted that a psychological assessment resulting in a finding of "moderate" psychological difficulties and that a later evaluation by the same source found only "mild" symptoms (Tr. 28). The ALJ rejected Dr. Pestrue's finding of marked psychological limitations, determining that Dr. Pestrue's findings were based solely on Plaintiff's subjective complaints (Tr. 29-30). The ALJ found that the record did "not support in anyway" Plaintiff's allegations of back pain (Tr. 30). He rejected Dr. Adams medical source statement, noting "the very short nature of the one brief session" between Dr. Adams and Plaintiff and that Dr. Adams' "lack[ed] specialization . . ." (Tr. 31).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S.

-12-

197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at

-13-

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes a number of arguments in favor of remand.  First, he contends that hypothetical question to the VE did not include all of his relevant limitations, contending that the ALJ erred by failing to account for Dr. Pestrue's finding of marked psychological limitations.  *Plaintiff's Brief* at 9-12, *Docket #14.*   He argues secondly that the ALJ failed to provide "good reasons" as required by 20 C.F.R. § 404.1527(c) for rejecting Dr. Adams' October, 2012 opinion that he was unable to perform even sedentary work.  *Id.* at 12-14 (*citing* Tr. 500-501).  On a related note, he disputes the ALJ's finding that his claims of physical limitation were not credible.  *Id.* at 14-18.  He argues fourth that the case should be remanded for consideration of the material submitted following the ALJ's December 4, 2012 decision.[9]  *Id.* at 18-19.

The evidence submitted after the administrative decision does not provide grounds for remand.  Likewise, Plaintiff's arguments relating to the alleged psychological limitations do

---

[9]

Plaintiff also makes a fifth, three-sentence argument that he meets Listing 12.05C or 12.05D, but fails to cite the threshold requirements for  Listing 12.05 or otherwise develop this argument.  20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05.  Accordingly, the Court declines to consider this argument.  "'It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones'" *Preston v. Commissioner of Social Sec.,* 2013 WL 3944419, *4 (E.D.Mich. July 31, 2013) (Randon, M.J.) (*citing McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997)).

not merit a remand.  In contrast, Plaintiff's contention that his back condition precludes the performance of exertionally light work provides grounds for remand.  The arguments are addressed in that order.

### A.  The "Sentence Six" Material

Plaintiff argument that the material submitted after the administrative decision justifies a "Sentence Six" remand is not well taken.  *Plaintiff's Brief* at 18-19.

Pursuant to the sixth sentence of 42 U.S.C. § 405(g), material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."  § 405(g).

The evidence added to the record after the administrative opinion (Tr. 503-527, 554-556) does not justify a remand.  First, a number of the records duplicate those considered by the ALJ.  Others, while not copies of the already submitted records, do not shed any new light on Plaintiff's physical or mental conditions (Tr. 504, 515, 555).   For example, a 2012 unremarkable x-ray of the left knee neither supports nor detracts from Plaintiff's claims (Tr. 504, 515).   The 1996 records showing that Plaintiff denied concentrational problems following a 1996 closed head injury would not be likely to change the administrative decision -  particularly since the prison medical records created between 2007 and 2011 discuss Plaintiff's mental condition in detail.  To satisfy the "materiality" requirement for a Sentence

Six remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir.1988).

As discussed above, it is unclear whether Exhibit 15F (consisting of Plaintiff's treatment records following the 1996 accident) was actually part of the record before the ALJ (Tr. 528-553). However, even assuming that these records were not among the ones reviewed by the ALJ, they would provide grounds for remand. The ALJ addressed the more recent prison treatment records showing some degree of cognitive limitation (Tr. 28). He acknowledged the severe impairment of "borderline intellectual functioning" at Step Two of the his analysis and again, in the RFC limiting Plaintiff to "simple, routine, and repetitive tasks" where he was not required to read (Tr. 27). The 1996 records do not suggest greater mental limitations than those found in the RFC.

Notably, Plaintiff does not argue that the above-discussed evidence provides grounds for remand, but rather, cites post-decision findings by Jose Mari G. Jurado, M.D. in support of the disability allegations. However, the Appeals Council declined to make Dr. Jurado's findings part of the transcript because they were created after the December 4, 2012 administrative decision, finding that the records were irrelevant to whether Plaintiff was disabled as of that date (Tr. 2); *See Sizemore* at 712. Because the records are not part of the transcript and Plaintiff did not attach the records to his brief, the Court cannot determine

whether they would support a Sentence Six remand.  Plaintiff's request for a Sentence Six remand should be denied.

### B.  The Findings Regarding Plaintiff's Mental Conditions are Well Supported[10]

Plaintiff's argument that the ALJ erred by discounting the allegations of mental and cognitive problems is without merit.  The ALJ cited the prison treating records which showed initially moderate then later mild psychological/cognitive limitations (Tr. 28-29, 300, 329, 341, 344).  The ALJ permissibly discounted Dr. Pestrue's January, 2012 findings of "marked" psychological limitation, noting that it stood at odds with both the prison records and March, 2012 findings of only mild and moderate limitations (Tr. 29, 79).  The ALJ noted that at the time of Dr. Pestrue's evaluation, Plaintiff was not taking psychotropic medication or seeking mental health treatment despite the ability to procure  treatment for physical complaints (Tr. 30).  He observed that Plaintiff was able to hold an unskilled job for several years before his 2007 incarceration (Tr. 32).  Because these findings are well supported and explained, they are entitled to the "great weight" generally accorded the ALJ's credibility determination. *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007) (*citing Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); *See also Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An

---

[10]

While I note one discrepancy between the hypothetical question forming the basis of the job findings and the RFC, this will be later addressed along with the other, substantive grounds for remand.

-17-

ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

Likewise, the ALJ did not err in his choice of hypothetical limitations regarding the mental/cognitive conditions.  The hypothetical question restriction to "simple, routine, and repetitive" work, by itself, is not inconsistent with a finding of moderate limitations in concentration, persistence, or pace (Tr. 29, 79).   *See Smith-Johnson v. Commissioner of Social Sec.,* 579  Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014). A number of courts in the district have found the terms "simple," "routine," and "unskilled" sufficient to account for the claimant's moderate concentrational limitations. *See Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" adequately accounted for the claimant's moderate concentrational deficiencies); *see also Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich.  June 16, 2008).

Aside from the "simple, routine, and repetitive" modifiers, the ALJ addressed the psychological restrictions by limiting the hypothetical individual to "only occasional decision-making and work place changes" and "only occasional superficial contact with coworkers, supervisors and the public" (Tr. 68-69).   Plaintiff's argument that Dr. Pestrue's finding of

-18-

*marked* limitations ought to have been reflected in the hypothetical modifiers posed to the VE is without merit. Because the ALJ provided a well supported rationale for rejecting Dr. Pestrue's findings, he was not required to include them in the question to the VE. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to include discredited allegations in the question to the VE).

### C. Limitations Pertaining to the Back Condition

In contrast, the ALJ's finding that Plaintiff retained the physical capacity for exertionally light work is not well supported. By itself, the March, 2012 MRI of the lumbar spine showing a disc degeneration at L5-S1 stenosis "with possible mass effect" on the nerve root (Tr. 373, 379-380) supports Plaintiff's report of moderate to unbearable lower back pain, radiculopathy, and the need to change positions when needed (Tr. 48-49, 61-63). The severity of his condition is also underscored by the fact that after early March, 2012 x-rays showed moderate to severe degenerative changes, he was immediately referred for a neurosurgical consultative examination and an MRI (Tr. 373, 379-380).

The ALJ discounted Dr. Adams' October, 2012 finding that Plaintiff was unable to perform even sedentary work due to back problems (Tr. 31). The ALJ declined to accord "treating source" deference to the findings on the basis that Dr. Adams' had only examined Plaintiff once prior to completing the assessment (Tr. 31). While this constitutes an arguably "supportable" basis for rejecting Dr. Adams' opinion, the ALJ's other reason– Dr. Adams was unable "to review [Plaintiff's] inconsistent statements to prison officials in the past" (Tr. 31-

-19-

32)– is wholly tangential to the 2012 MRI confirming Plaintiff's report of severe back pain.

Further, as noted by Plaintiff, Dr. Adams' October, 2012 assessment was also supported by the treating source records showing that Plaintiff did not obtain significant relief from steroid injections (Tr. 481) and medical records showing that the prescribed medication did not resolve the back pain and radiculopathy (Tr. 494).   None of the treating records suggest that Plaintiff exaggerated his symptoms.  The September, 2012 records indicate that Plaintiff's failure to seek therapy or surgical treatment was attributable to his lack of health insurance rather the lack of symptomology (Tr. 494).   Whether or not the ALJ was entitled to discount all or a portion of Dr. Adams' findings (including the finding that Plaintiff was unable to perform *any* work), it does not follow that the record supports the conclusion that ALJ's conclusion Plaintiff was capable of walking up to six hours a day and lifting 20 pounds at the time of the administrative decision.[11]  Put another way, it is unlikely that any treating source would recommend 20 pounds lifting to a patient with a significant disc herniation accompanied by nerve root involvement.

For overlapping reasons, the ALJ's credibility determination as to the physical limitations is not well supported.  The ALJ noted that Plaintiff's claims of intractable back pain and the inability to lift more than five pounds at the time of the hearing was contradicted

---

[11]A March 23, 2012 "Disability Determination," found that Plaintiff was capable of light work based on his 2011 statement that he could lift 20 pounds (Tr. 80-81).  Notably, the Single Decision Maker (referencing the March, 2012 x-rays) did not have benefit of the MRI studies from later the same month (Tr. 80).

by his September, 2011 acknowledgment that he could lift 20 pounds (Tr. 54).   However,

March, 2012 MRI showing a disc herniation with nerve root involvement supports Plaintiff's

testimony that because he had not health insurance, he "lived with the pain" until it became

unbearable (Tr. 48, 54).  Plaintiff's testimony that he continued to cope with the condition

with only medication and position changes (Tr. 50) is consistent with September, 2012

treating records showing that he was unable to afford either physical therapy or surgery (Tr.

494).   Because, the ALJ's finding that Plaintiff could perform a significant range of

exertionally light work is not supported by substantial evidence, a remand is required.

### D.  Other Grounds for Remand

Aside from the above-discussed grounds for remand, I note a discrepancy between the

hypothetical question forming the basis of the VE's job testimony and the RFC. This

discrepancy which requires, at a minimum, clarification.  The VE testified that if the

hypothetical individual originally described by the ALJ were limited to work that could be

"learned by short demonstrations," that restriction, combined with the other hypothetical

modifiers would preclude all work (Tr. 68-70).  Then ALJ then substituted the "learned by

short demonstrations" limitation to work that could be learned in the time between a short

demonstration and "up to and including 1 month" (Tr. 70).   In response to the substitution,

the VE responded that the individual could perform the work of a housekeeping cleaner, small

products assembler, or "assembler II" (Tr. 70-71).  In the administrative decision, the ALJ

adopted the VE's job testimony given in response to the modified hypothetical question (Tr.

-21-

35). So far, so good.

However, the RFC in the administrative opinion states that Plaintiff was limited to work with "simple instructions after a short demonstration" (Tr. 26-27). It is unclear whether the "short demonstration" language of the RFC was simply a misstatement or reflects the ALJ's conclusion that Plaintiff was limited SVP 1 jobs. *See* fn 8, *above.* Consistent with the VE's testimony, the current RFC would direct a disability finding. In any case, a remand for clarification is warranted.

However, because the present transcript does not establish an "overwhelming" case for disability, the errors discussed herein do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). Although the ALJ overlooked the import of the March, 2012 MRI, it is not a given that Plaintiff would be found disabled if limited to sedentary work. As such, I recommend a remand to the administrative level for further proceedings consistent with this Report.

## CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 28, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager